May it please the court, counsel. My name is Tim Green and I'm the attorney for the plaintiffs, Willie Nobles, who is the father of the deceased in this matter, the little girl Zania Nobles, and also attorney for Virginia Parham, personal representative of the estate of Zania Nobles. As you're aware by reading the briefs, Zania was murdered by her mother within 107 days after the defendant, State of Washington, placed her in the custody of her mother in dependency proceedings. And this action here is a 1983 action against the State of Washington for the actions in the case or the recklessness in the case of the caseworker and her supervisors in this matter. I just have one kind of question to start. Obviously you're not going to be surprised that we want to talk about DeShaney. No, no, no. That was next. And I know that you don't think it's applicable here, but my question is this. When you look at DeShaney, the language in there says whether you put the person in a worse position than they would have been had the state not intervened. When you have a birth mother, I'm having trouble understanding how if the state hadn't intervened, she would have been in any different position than being with the birth mother, albeit in this very tragic circumstance. Well, in this situation, the mother was put in prison within two months after the birth of Zania. And when she was released from prison, and I know to some extent I'm speculating, but I think the facts will bear this out. When she was released from prison, she didn't have any place to live. She had a drug problem. And of course, there's mental health issues as well. So there's a question as to whether she would have really taken affirmative action to regain custody of her daughter, who was at that time in the hands of, although it was a foster parent, actually Zania was living with a stuffed sister at the time. And would the mother have reached out and said, okay, I want my child back, or that would not necessarily have happened. What happened in this case, which I think is somewhat unusual, at least from my experience in doing, I've done some dependency matters, is that the mother gets out of prison May of 1998, and she's placed back. And Zania is placed with her February of 2000, a year and a half later. And yet there's abundant evidence in the record that she was having problems fulfilling the court's conditions. What is this remained a dependent child? I see this throughout this. Is that the condition we have to look at here? In other words, there's no doubt that the child was not in the direct custody of the mother at certain times and was in these other social services actions. But it continues to be said that she was a dependent child. What does that mean? Well, that means that the state has jurisdiction under RCW 1334, has jurisdiction in the case, and has taken jurisdiction and is taking affirmative steps to either put the child back in the custody of the mother and then terminate the dependency proceedings, or terminate the parent-child relationship, or place the child with another guardian. But it's a statutory action in the state, and I believe other states have it, I'm not sure, but it's a statutory action where the state is actually acting in loco parentis and has got certain goals that it seeks to fulfill. And the defense is right. The defendants are right that usually a goal is direct to bring mother and child back together, to live together again. Our question in this case, though, is that where there were so many problems, whether the state wasn't rushing it in this case and actually artificially placing the child back with the mother when the mother wasn't ready to take the child. I was even further down the line as I read the record. One of the persons that was dealing with this problem, one of the state, I guess it was a social services worker, had started termination of parental rights proceedings. That person was taken off. The next person didn't go forward. In fact, they never scheduled a hearing. So there was at least something going on here that if carried out would have, I don't know what would have happened after that, but certainly the child might have been removed and the mother's parental rights could have been terminated. That's right. At the time, the court was, I believe it was in March of 1999, the court was going to terminate, well, a termination hearing was scheduled. I'm not going to say termination was going to occur. It never went to hearing. It never went to hearing, but the state was recommending termination. And then that social worker was taken off the case. Another social worker put on. The social worker that we're saying acted with reckless indifference, she comes on, and even though the same problems are occurring, she's moving in the opposite direction. She's moving towards, and we submit recklessly and aggressively moving towards placing the child back with the mother. And I understand all those facts, but what does that have to do with DeShaney, if anything? Well, what it has to do with DeShaney was in DeShaney, the child was taken away from the father who was the custodial parent and had a history of being the custodial parent, and then was given back to the father in a very short period of time. Here the mother never was the custodial parent. Oh, see, that's a problem I have. I don't see where she never was. I don't understand what happened when they put the daughter in the foster home. She certainly was in jail and didn't have custody then. Right. But when she got out of jail, immediately there was an attempt to put her back into custody. There never was any legal methods to terminate her right to custody. That's what I was talking about, the suspended child business. It was always get her back to the mother. And other than the foster home, she always was a custodial parent, right? Well, legally she was the biological parent, but what I'm saying is that— Who terminated her custody? Well, she was put in prison. She never had physical—I'm talking about not in a legal sense, but in a physical sense. Under Washington law, her parental rights were not terminated. Right. Well, what is the effect of a dependency proceeding? I assume that that took place here. Is that correct? Right. And the effect of that is that the state now has placed itself in a position where it's taking responsibility for the welfare of the child. Now, I know it doesn't have physical custody, so we don't have a custodial exception. You have a third party. We've got a third party in. But we're saying that a danger was created by the state's actions in rushing the child back into the mother's custody. Well— Are you saying there was safe haven with the foster parents? Yes, that the foster parents were providing a stable home and that the mother was still having problems so that the state could have, even if they decided not to terminate the mother, you know, could have waited longer before— I mean, walk me to Duchenne again. Does that mean that Duchenne is not going to apply at all because of this interim dependency and your claim that the acts of rushing the child back make this a non-Duchenne case? Yes, that's correct. I'm saying it's not—Duchenne doesn't apply in this case because this isn't a case where— The way I read Duchenne is the emphasis is on the physical, the fact that the father has got a physical control of the child, and that physical control is just briefly interrupted. Here we've got a case where the mother never had that history. Well, the one thing I see in the Duchenne that I'm trying to figure out how that fits, we conclude that a state's failure to protect an individual, in this case the child, against private violence does not constitute a violation of due process. It seems to me that's a holding that we have to go from, and then we have to figure out, well, is there some exception here? Well, I would say the exception is that here this is more like— this is more like—I have to say placing a child in a foster home and then back up and explain why I'm saying that. Because I know this is not placing the child in a foster home. It's placing the child with a biological mother, but it's still an affirmative act of making a placement, which wasn't done in Duchenne. It wasn't a placement. It was we're taking a child out on an emergency interim basis. The state doesn't have jurisdiction over your child. It has an emergency order, like an injunction, and now we're giving the child back. So the state has not taken the role that it's taken in this case, which is much larger. Well, in Duchenne, as I understand it, the father was always abused, I think, and then the child was put back. The abuse continued. Okay, in this case, maybe I'm wrong. Help me. I don't think there was any abuse on the child here, just that the mother is a drug addict and is just not responsible. But when she comes back in the same condition, not responsible, fails drug tests, et cetera, but there's no history of abuse of the child, I don't think, and then the child is put back to the mother, and there isn't an immediate problem, but later on, of course, the child is— Well, there were some signs that there might be a problem. There was a difference in that in Duchenne, I guess. I mean, there is the interim step here where you claim it was safe haven and that it was bad going back. You have to be arguing some sort of fact that we'd have to consider or write into an opinion that the mother was incompetent, and yet they started those proceedings and never went through with that. So how do we—again, that thing is a mess to me with Duchenne. I don't see the difference. Well, in a dependency proceeding, I mean, the state is involved to the extent that you've got review hearings every six months. So there was an ongoing— And they did review, right? They did review. Now, what we're contending is that the state caseworker had misrepresented facts at review hearings by not telling the full story in order to get the reunification accomplished. And I believe I made that clear in my brief. I'm sorry if I— No, I mean, I think you've indicated that she— Yeah, that she made mistakes. She actually prevaricated about— Pardon? The caseworker actually lied, did she not, about the failure of drug tests? Well, she omitted them. She did not—she had a duty to make—to reveal. I mean, to tell the whole story. And when she's saying that good progress is being made, she's complying with conditions. Yet we're submitting that she's lying. She didn't overtly say that she's passing these drug tests when she wasn't, but she was saying that she was—what she said was that she was making good progress on all fronts and there was not a problem when, in fact, these dirty UAs were being turned in. She had a duty to at least bring up the fact that there were these dirty UAs and then maybe give an explanation. I can't see that as an inadvertent omission. Now, in Duchenne, was the child a ward of the state? No. In this case, is the child a ward of the state? Isn't that the result of a dependency proceeding? Yes. In a dependency proceeding, the state actually is—in Ray J. W. H., as I cited that case, the state is actually placing itself in the position of having overall custodial rights. So that's where we're saying that's one of the differences, a legal difference between our case and Duchenne, plus the fact that there's a physical difference in that the mother never was— although she was a biological parent, she never had the physical control over the child that we were having that you had in Duchenne, so that in Duchenne, you'd say the father is overall the private actor in this case. The state's interaction with the father was—I don't want to say it was insignificant, but it was an emergency short-term basis. Father was the private actor. In this state, the state is an actor. The state is involved in legal proceedings, dependency proceedings. It's on a long-term basis. Ironically, our contention is that perhaps it should have been for a longer term, that the state should not have tried to unify as quickly as— even when the unification was done, dependency proceedings weren't over with, because there was a review hearing that was to be scheduled later, but they were putting the child back in the mother's hands. Even then, the mother is still not the—the state is still the legal custodian because of the fact that it's a dependency proceeding, but the child is back in the mother's physical control. But if we were to find some way to reconcile your position with Duchenne, then the next thing we would have to figure out is the qualified immunity issue. And it seems like, in a way, the mere fact that we would have to distinguish and find that Duchenne, you didn't really apply, would also mean that if there is a constitutional violation here, that it wasn't really established at the time. Would you address that aspect of the case? When you—I believe there was a constitutional— You said there wasn't a constitutional violation established. No, no, I said, let's assume there's a constitutional violation under the FDA, which is the first thing you have to do to get to, you know, whether or not— You're saying what actions were taken? No, no, no, no. The two aspects of it is, you know, whether— first you have to say there's a constitutional obligation, just a part, and then the second part of that test is we have to figure out whether that was well-established such that the caseworker, reasonable caseworker, would know and understand that it was a well-established constitutional principle at that time. Well, I would contend that the statute, RCW 74, the statutory entitlements the child has when DSHS gets involved, as well as the dependency statutes would give the caseworker notice that there were certain rights that the child had to— But are they constitutional rights? You see, it has to be a constitutional violation. Right, and I would contend that the constitutional right would be that— of course, she would have to have my argument in her head, but I would think— What argument in her head would she have? Okay, it would be that if you have to have— you have to act with care in placing a child in a foster home, in the case I cited, Doe versus—I believe it was Doe versus New York, and there are other cases also which have stated that foster home placements, in a foster home placement, a caseworker can be found. If the caseworker is reckless, the caseworker can be found liable under Section 1983. That should give her notice that in this situation, the same thing is happening because it's a situation where, again, the mother didn't have physical custody and the child's in a dependency proceeding. The caseworker should be on alert that this is the same type of situation, and she's got certain obligations to protect the child's constitutional rights. Would you like to save the rest of your time for rebuttal? Yes, I do. I know it's very short, but thank you. Good morning. My name is Ray Thomaser. I'm here on behalf of the individual dependents that have been named in this case. I'm with the Washington State Office of the Attorney General in this case. Could you help me with one thing so that, as you argue, I make sure that I'm on the right page with you? All these acts of the state that we've been talking about, the failure to report to the court, the dependency proceeding, those acts of the state, if those are the allegations, they failed to report a drug use, et cetera, were before custody was restored to the mother by the child, as I remember it. They were monitoring the mother before the state gave custody back. Right. And so, listen, you should have done these things now. When the custody went back and the child was physically placed with the mother, did that end Washington State's supervision at that time under the so-called dependency securing? No, it doesn't end the state's involvement in a case when physical custody goes back to the mother. The child is still considered a dependent child. Thank you. Thank you. All right.    Thank you.  Thank you. Thank you. Thank you. Thank you. Thank you. What happened here? Did the state hear? Well, the answer is that there's no constitutional distinction there with what the state did and what happened in Descheny. In fact, in this case, when you look at the facts of Descheny, Your Honor, the action of the state of Wisconsin in that case was the removal of the child because of physical abuse. What happened to Joshua Descheny, even when they put the child back into the home with the father, all of a sudden the child was showing up to ER with suspicious bruises, and so the state of Wisconsin in that case knew it was physical abuse. In this case, there was never any indication that Aretha Sconyers, the mother of this child, was a physical danger to the children, ever. That was not part of the spectrum. Even the case workers earlier in the case submitted affidavits to the court saying that risk of physical abuse was never one of the problems they were working with on this mother. The problem with Ms. Sconyers was marginal parenting skills and inconsistent abstinence from drugs, not physical abuse to that child. And so when Zania Nobles was returned to the home of Aretha Sconyers, the danger here was simply whether or not Aretha Sconyers was ever going to be more than a marginal parent. The danger was not that Aretha Sconyers was going to physically abuse this child. I want to also address a little bit, counsel has argued kind of a mixture of a couple of the exceptions from Descheny. The Descheny case itself has talked about what are the constitutional parameters of when the government owes an affirmative obligation to protect somebody. What the court said under the Due Process Clause is generally there is no affirmative duty to protect except for some certain situations. There are two exceptions. One is the special relationship exception and the other is the danger of creation exception. Plaintiff's counsel in this case essentially has argued the special relationship exception when he tries to make the analogy to the foster home in saying that somehow this was similar to putting Zania in a foster home even though it was returned to a biological parent. When you look at the historical precedent for the special relationship exceptions as discussed in Descheny and as followed by the circuit courts, what that exception deals with is institutionalization or incarceration of the individual. It's actual taking of physical custody of that person and removing their freedom to protect themselves. It's kind of the Estelle Youngberger analysis of the 14th Amendment. That's where that exception comes from. That's not what we have in any way, shape, or form in this case. The other exception is the estate created danger doctrine in this case. The reason that that doesn't apply under the facts of this case is simply because of the result that we have in Descheny. If government intervention in the life of a parenting child is taken such that a child is removed from the parent and the child is temporarily taken into a position of safety outside the parent's home and then the decision is made to put the child back into that home where this danger was, if that was enough to trigger constitutional protection, then Descheny would have been decided differently. It wasn't. What the court in Descheny ruled was that the state's knowledge of danger is not what triggers constitutional protection. It is the affirmative action of the state in removing the ability of the individual to protect themselves that triggers the constitutional duty. That is why the danger of creation doctrine can't apply in this case. Descheny is simply too similar on the factual dynamics to make the distinction. The kinds of danger of creation situations that we have in other cases don't involve a situation like this. What about the lying, or I guess it's the omission of the testing? Would that create some kind of a procedural due process problem? Because within the context of these hearings, once the state sweeps the person into their jurisdiction or the child, then it's presumed that the caseworker would be complying with the procedural components and basically by leaving out this big problem with the mother, it really misrepresents the mother's situation so it looks grossier to return the child to the mother. I want to try and argue both. There's a legal and a factual answer that I want to give the court to this question. The legal answer to this question is, regardless of what occurred as far as the testimony of the witnesses in this trial, the federal court in a 1983 action doesn't go back and look at whether or not that proceeding, you know, who told the truth and who didn't. That would be resolved through a state appellate process or a challenge within the nature in a dependency hearing. And I've cited a number of cases to the court in further answer to the court's question where there have been a number of attempts to circumvent the rule of Duchenne by plaintiffs trying to point to child protection legislation in various states saying that because there are specific provisions in state law that you must do X, Y, and Z, that the failure to carry those out has violated an entitlement, trying to make a property interest in the state procedures. The courts have uniformly rejected that proposition. I have this case cited in my brief. That has never been accepted. Kind of the groundwork for that is in the Olin decision. And the problem gets back, once again, to Duchenne because in order to have a procedural due process violation, it has to be safeguarding a substantive right. And in this case, Duchenne says that there is no substantive right to protection under the facts of this particular case. And therefore, consistent with the jurisdictions from a number of circuits, there would be no procedural due process claim. And I have also maybe a more specific answer to your court's question on what happened in the courtroom. How does the plaintiff get past the absolute witness immunity? The plaintiff's real complaint in this case is that the case workers made the wrong recommendation to the court, either because they just misread the case or because they were, you know, indifferent or for whatever reason, made the wrong recommendation. The recommendation was to return the child rather than to choose recommending termination. Well, the recommendation to the court, whether it's right, wrong, or indifferent, is completely within absolute immunity for what the recommendation of that case worker happens to be. And you can see in this case the complexity. I mean, the court was constantly wrestling, and all the parties were constantly wrestling with what are we going to do with this parent who can't maintain complete compliance. At what point do we give up? At what point do we go for termination? These are issues that are addressed within the state dependency structure, not in a Section 1983. I also want to say factually, the allegation here that the case worker somehow misrepresented the record or had citations for omissions, the plaintiff had pointed to affidavits that were not intended to be comprehensive reviews. If you look at the supplemental excerpt of record, page 47, that I provided this court, is the discharge summary of Aretha Sconder's alcohol and treatment record. That is a complete record of all of her drug testing over time. That is copied to all of the counsel in the case. Everybody had the history. The recommendation from the treatment and alcohol group, the task report is the title of it, page 47 of that record, specifically says that Aretha Sconder is making progress. Not that she's perfect, but she's making progress. And if she was to relapse, she was going to be reevaluated for an inpatient treatment. The court order, the February 22nd order returning the child to the home of Aretha Sconder, picks up that recommendation, and it's reflected in the order of the court. The court was perfectly aware that we have a mother here who has not been able to maintain abstinence from marijuana use. And marijuana use was the only drug ever being detected from Aretha Sconder's discharge from prison. So everybody was aware that this is the problem with this mother. I also want to address, Your Honor, you had mentioned the problem here with qualified immunity. In my view, the Deshaney case is so factually similar, so dominating of the landscape, in this area, that to find a distinction, a constitutional distinction between what happened in this case and what happened in Deshaney would be going where no one has gone before, to a certain extent. And so qualified immunity then would come into play because the law must have been clearly established at the time that the action was taken. And if it was the court's ruling today that, no, there is a constitutionally significant distinction to make here in Deshaney, that would be essentially a new decision. I do want to mention a couple of cases from other circuits. The plaintiffs have made a very big deal about the fact that Zania Nobles was a dependent child in this case. And does that make a constitutionally significant difference? The 11th Circuit has evaluated that specific question in the Wooten case that's contained in my brief and has said that, no, the fact that the state has named a child as a dependent child and has that legal status does not change the impact of Deshaney, which was heavily focused on who has physical custody control. And when the control, physical custody, is with the parent, Deshaney still controls the analysis. And so the 11th Circuit has looked at that specific question. The 8th Circuit has kind of a similar situation that involved a grandparent. But in that case, there was a court order where the court had ordered the Department of Social and Health Services to maintain an ongoing and open file in a home where there had been abuse. And so the issue was raised, well, did that ongoing order somehow create an entitlement to protection? And the court there also said, no, it does not. The Deshaney analysis still controls the due process ruling and that there is no general duty to protect under those circumstances. That's kind of the conclusion I did want to address just at the end here. You know, the facts of this case, as difficult as they are, are no more or less tragic than what happened in Deshaney. But that decision remains, has, since it has come down, the case that controls what are the boundaries of the Constitution? Where is the boundary between what is the constitutional cause of action and where does the plaintiff have to come to state law to seek their remedy? In this particular case, what we had, as in Deshaney, was government intervention between a parent and a child, removing that child for a period of time and then returning the child back to the parent. Deshaney is right on point in holding that there is no duty of protection under those circumstances. Judge Bryant correctly dismissed this action and plaintiffs will have to return to state court, as they are prepared to do in this case, to pursue a negligence action in the state courts of Pierce County. Thank you. Thank you. Any rebuttals? Yes. Very briefly. I, first of all, as far as the danger created exception to the rule that there is no constitutional protection from violence from private actors, I would, I would argue that in this case, because we are dealing with a minor, that the court should take a more expansive view than, say, in the case of, most of the cases, or a lot of the cases that I cited dealt with adults. And I think because of the fact that we're dealing with a minor and the vulnerability of a minor, I think that the court should take a more expansive look. I, the way I read Deshaney is, I don't think it was, the issue was as much that this was a biological parent, but that the fact is that this parent, having custody, was overriding was a, this was a private actor situation. And in our case, it's, it's, it's not, it's more complex. And I think it gives rise to 1983 action because the statute does make clear the state has accepted a responsibility in a dependency proceeding to, to create goals and to create objectives that, that are, that are to be in the interest of the child and of the mother. And in that case, the state has, has jumped in far more than it did in the, in the case in Wisconsin, especially considering the fact that the Wisconsin case is very, is very contracted in time. We were talking about something that occurred over a period of a few months, whereas in this case, we're talking about events that, a dependency that lasted for three years. It was actually intended to last longer, except for the time with death of Zaniah. Thank you very much. Thank you. The case of Nobles v. Washington is submitted.
judges: B Fletcher, Brunetti, McKeown